UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| EMILY RICE and CHARLYNDA SNODGRASS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:16-CV-452 (CEJ) |
| PROGRESSIVE PREFERRED INS.CO., | ) ) ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross-motions for summary judgment. Also before the Court are the plaintiffs' motion to supplement their motion for summary judgment and the defendant's opposition. All issues are fully briefed.

### I. Background

At all relevant times, plaintiffs Emily Rice and Charlynda Snodgrass were insured under identical policies of automobile insurance issued by defendant Progressive Casualty Insurance Company (Progressive).[1] The policies included underinsured motorist coverage (UIM) up to $100,000 per person. In October 2012, Snodgrass was involved in an automobile accident in which she sustained physical injuries. In November 2012, Rice was injured in an automobile accident. Both accidents were caused by the negligence of the other drivers. Each plaintiff recovered $100,000 — the full liability coverage available under the negligent

---

[1] Plaintiffs named the defendant as "Progressive Preferred Insurance Company." The parties jointly stipulated and agreed that the action should be treated as having been filed against Progressive Casualty Insurance Company. Joint Stipulation at ¶ 23 [Doc. #25].

drivers' insurance policies. However, each plaintiff sustained more than $200,000 in injuries and damages.

Plaintiffs submitted claims to defendant for coverage pursuant to the UIM provisions of their policies. Defendant denied the claims, asserting that the negligent drivers who caused plaintiffs' injuries were not operators of an underinsured motor vehicle as defined by the policy. Plaintiffs then filed this action, asserting claims for coverage and for vexatious refusal to pay. The parties submitted the issues for decision on cross-motions for summary judgment, stipulating that the substantive facts presented by the plaintiffs' claims are uncontroverted and identical. After submission of the briefs, plaintiffs moved to supplement their motion for summary judgment by filing an order entered by a state trial court in a case involving an underinsured motorist provision in a policy issued by defendant.

**II. Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp.,

2

475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed.R.Civ.P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

"Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law." Progressive Cas. Ins. Co. v. Morton, 140 F. Supp. 3d 856, 860 (E.D. Mo. 2015) (citations omitted). Because "the interpretation and construction of insurance policies is a matter of law, . . . such cases are particularly amenable to summary judgment." Id. (quoting John Deere Ins. Co. v. Shamrock Indus., Inc., 929 F.2d 413, 417 (8th Cir. 1991)).

### III. Discussion

In this diversity action, the Court is bound by the decisions of the Missouri Supreme Court regarding issues of substantive state law. Owners Ins. Co. v. Hughes, 712 F.3d 392, 393 (8th Cir. 2013). Decisions by the Missouri Court of Appeals may be used as an indication of how the Missouri Supreme Court may rule, but the Court is not bound to follow these decisions. Id.

3

Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions. Todd v. Missouri United Sch. Ins. Council, 223 S.W.3d 156, 163 (Mo. 2007). In construing the terms of an insurance policy, courts in Missouri apply the meaning an ordinary person of average understanding would attach if purchasing insurance, resolving ambiguities in favor of the insured. Dutton v. Am. Family Mut. Ins. Co., 454 S.W.3d 319, 322 (Mo. 2015). Where the policy's language is unambiguous, it must be enforced as written. Floyd-Tunnell v. Shelter Mut. Ins. Co., 439 S.W.3d 215, 217 (Mo. 2014). Ambiguities arise when there is "duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." Burns v. Smith, 303 S.W.3d 505, 509 (Mo. 2010) (citation omitted). Ambiguity also arises where an insurance clause appears to provide coverage but other clauses indicate that such coverage is not provided. Seeck v. Geico Gen. Ins. Co., 212 S.W.3d 129, 134 (Mo. 2007). However, "[d]efinitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." Todd, 223 S.W.3d at 163. Finally, a court may not create an ambiguity in order to distort the language of an unambiguous policy or to enforce a particular construction which it might feel is more appropriate. Rodriguez v. Gen. Acc. Ins. Co. of Am., 808 S.W.2d 379, 382 (Mo. 1991).

The UIM coverage provisions at issue in this case are contained in Part III(B)[2] of an auto policy coverage endorsement.

> **INSURING AGREEMENT**
>
> **[W]e** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury** . . . arising out of the . . . use of an **underinsured motor vehicle**.

Part III(B)(a)(3) [Doc. #25-1 at 43].

> The policy sets forth the following definition:
> **"Underinsured motor vehicle"** means a land motor vehicle . . . for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident <u>is less than the coverage limit for Underinsured Motorist Coverage</u> shown in the **declarations page**.
>
> > An "**underinsured motor vehicle**" does not include any vehicle or equipment:
> >
> > * * *
> >
> > h. for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident <u>is equal to or greater than the coverage limit for Underinsured Motorist Coverage</u> shown on the **declarations page**.

Part III(B)(b)(2) (underlined emphasis added).

The Progressive policy defines an "underinsured motor vehicle" to exclude any vehicle that has liability coverage in an amount that "is equal to or greater than the coverage limit for Underinsured Motorist Coverage" shown on the declarations page. The parties stipulate that the plaintiffs had $100,000 in UIM coverage. They also stipulate that the "limit[] of liability" under the negligent drivers' policies was

---

[2] The policies are substantively identical and, for simplicity's sake, the Court will cite from the Rice policy, attached to the parties' joint stipulation of facts as Exhibit 1 [Doc. #25-1] . The Snodgrass policy is attached as Exhibit 2 [Doc. #25-2]. The language is in bold as it appears in the policy.

5

$100,000. By its plain language, therefore, the policy definition of "underinsured motor vehicle" does not apply to the negligent drivers' vehicles, resulting in no coverage for plaintiffs' claims. See Burger v. Allied Prop. & Cas. Ins. Co., 822 F.3d 445, 448 (8th Cir. 2016) (holding that, under Missouri law, tortfeasor with $100,000 liability limit was not underinsured driver within meaning of UIM provision with a liability limit of less than $50,000); Hughes, 712 F.3d at 394 (because tortfeasor's coverage was equal to liability limit of insured's policy, tortfeasor was not underinsured motorist).

The Missouri Supreme Court addressed a substantively similar UIM provision in Rodriguez v. Gen. Acc. Ins. Co. of Am., 808 S.W.2d 379 (Mo. 1991). The insured in Rodriguez was injured in a car accident with a negligent driver whose insurance company paid $50,000, the limits of the driver's policy. Rodriguez, 808 S.W.2d at 380. The insured's damages exceeded $50,000 and she sought coverage under her policy, which provided UIM coverage up to a limit of $50,000. In Rodriguez, as here, the insuring agreement defined "underinsured motor vehicle" as a vehicle for which the "limit for bodily injury is less than the limit of liability for this coverage." Id. at 380-81. The court held that this definition of underinsured motorist coverage was "neither ambiguous nor misleading." Id. at 383. And, under this definition, the insured was not entitled to coverage because the tortfeasor's bodily injury limit was not "less than" the insured's UIM limit and, therefore, the vehicle driven by the tortfeasor was not an "underinsured motor vehicle." Id. at 382.

Plaintiffs do not dispute that, under Rodriguez, the definition of "underinsured motor vehicle" is unambiguous. Instead, they cite a number of subsequent Missouri cases in which the courts found that ambiguity arose from

other provisions of UIM policies. See Jones v. Mid–Century Ins. Co., 287 S.W.3d 687 (Mo. 2009); Seeck v. Geico Gen'l Ins. Co., 212 S.W.3d 129 (Mo. 2007); Simmons v. Farmers Ins. Co., Inc., 479 S.W.3d 671 (Mo. Ct. App. 2015); Fanning v. Progressive Nw. Ins. Co., 412 S.W.3d 360 (Mo. Ct. App. 2013); Miller v. Ho Kun Yun, 400 S.W.3d 779 (Mo. Ct. App. 2013); Wasson v. Shelter Mut. Ins. Co., 358 S.W.3d 113 (Mo. Ct. App. 2011); Ritchie v. Allied Prop. & Cas. Ins. Co., 307 S.W.3d 132 (Mo. 2009); and Chamness v. Am. Fam. Mut. Ins. Co., 226 S.W.3d 199, 202 (Mo. Ct. App. 2007). Of these cases, only Jones, Seeck, and Ritchie were decided by the Missouri Supreme Court and are binding on this Court. And, as addressed by other federal courts, these cases do not lessen the force of the holding in Rodriguez. See Hughes, 712 F.3d at 395 (Jones "actually confirms . . . the operative holding of Rodriguez"); Progressive Cas. Ins. Co. v. Morton, 140 F. Supp. 3d 856, 865 (E.D. Mo. 2015) (distinguishing Seeck because it applied to insureds who were injured while occupying a motor vehicle other than their own); Jaudes v. Progressive Preferred Ins. Co., 11 F. Supp. 3d 943, 959 (E.D. Mo. 2014) (in Ritchie, "it was undisputed that the definition of underinsured motor vehicle was satisfied and that some level of underinsured motor vehicle coverage applied.").

Plaintiffs argue, as a general matter, that an ambiguity arises because other provisions in the policy excuse defendant from ever paying the full $100,000 coverage limit set forth in the policy's declaration page. The Missouri Supreme Court rejected a similar argument in Rodriguez, stating:

> It is difficult to understand why the mathematical inability to collect a full $50,000 in underinsured motorist coverage renders the coverage meaningless. The effect of underinsured motorist coverage is to assure the [insured] of receiving $50,000, the contracted amount of protection.

7

Rodriguez, 808 S.W.2d at 383 n.1; see also Burger, 822 F.3d at 450 ("[D]isputes about the *amount* [the insurer] must contribute simply do not inject ambiguity into the meaning of *what* is a covered 'underinsured motor vehicle' so as to render the UIM definition unclear." (emphasis in original) (internal quotations and citation omitted). Plaintiffs also argue that the policy is ambiguous because it does not state whether it provides gap or excess insurance. [Doc. #30 at 6]. The plaintiff in Rodriguez court made a similar argument, asserting that the policy should be construed to provide excess coverage under the "objective reasonable expectations doctrine." Rodriguez, 808 S.W.2d at 381. The court held that application of this doctrine depends on the presence of an ambiguity in the contract language. Id. at 382; see also Jaudes, 11 F. Supp. 3d at 957 ("Rodriguez expressly prohibits a court from finding an ambiguity solely by giving effect to the insured's reasonable expectation."). The Rodriguez court found no ambiguity arising from the fact that the policy set-off the money received from the tortfeasor's insurer against any recovery under the UIM provision. Id. at 382.

To summarize, under Rodriguez, the definition of underinsured motor vehicle contained in the Progressive policy is unambiguous. Plaintiffs may prevail only if they can identify some other aspect of the policy that creates "duplicity, indistinctness, or uncertainty" as to this definition or renders it "reasonably open to different constructions." Burns v. Smith, 303 S.W.3d 505, 509 (Mo. 2010) (citation omitted). Plaintiffs argue that the following four provisions of the policy create ambiguity.

    1.    **The Declarations Page**

8

The declarations page states that the coverage limit for UIM coverage is "$100,000 each person." No figure appears in the place where a deductible would be identified. [Doc. #25-1 at 1]. Plaintiffs argue that the absence of a deductible would reasonably cause an insured to believe that the $100,000 liability limit applies without set-off or deductible.

As a matter of policy interpretation, "the declarations page is not a complete description of the coverage in an insurance policy." Swadley v. Shelter Mut. Ins. Co., No. SD 34129, 2016 WL 3944716, at *5 (Mo. Ct. App. July 19, 2016). "The declarations state the policy's essential terms in an abbreviated form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the scope of coverage." Floyd–Tunnell v. Shelter Mut. Ins. Co., 439 S.W.3d 215, 221 (Mo. 2014). "The 'declarations' are introductory only and subject to refinement and definition in the body of the policy." Id. (internal quotation and citation omitted). "The rest of the policy often contains terms that limit or narrow the broad coverage stated in the Declarations page, such as definitions, exclusions, endorsements, and other miscellaneous provisions." Estate of Hughes v. State Farm Mut. Auto. Ins. Co., 485 S.W.3d 357, 361-62 (Mo. Ct. App. 2016) (rejecting argument that a court should restrict policy interpretation "to a reading of the coverage outlined in the Declarations page without considering the clear limitations and exclusions expressed in the Policy Booklet.").

Plaintiffs cite Fanning v. Progressive Nw. Ins. Co., 412 S.W.3d 360 (Mo. Ct. App. 2013), in which the Missouri Court of Appeals found that an ambiguity arose, in part, because the declarations page did not indicate any limitation other than the monetary figure of $50,000/$100,000 for UIM coverage. Thus, there was "no

9

reason for the ordinary insured to look any further than the declarations page for the levels of coverage and limitations thereof." Id. at 366. Other courts have questioned this reasoning. See, e.g., Morton, 140 F. Supp. 3d at 867-68 (finding "nothing ambiguous or misleading about a policy that offers underinsured motorist coverage in a certain amount on its face sheet and then defines 'underinsured motor vehicle' as it is defined here."); Jaudes, 11 F. Supp. 3d at 956 (rejecting the Fanning court's "suggest[ion] that . . . in order to avoid being ambiguous, Progressive's policy would need to state on the declarations page the "manner in which the[ ] maximum limits [reflected on the declarations page] could be reduced" or "nullified."). Furthermore, the declarations page at issue here includes the following statement: "**All Limits listed below are subject to all terms, conditions, exclusions and applicable reductions described in the policy.**" This language clearly informs the insureds that they must examine the other provisions of the policy to determine the limits of coverage and thus no ambiguity arises from the declarations page. See Owners Ins. Co. v. Craig, No. SD 34053, 2016 WL 3964628, at *6 (Mo. Ct. App. July 19, 2016) (finding declarations page did not create ambiguity even though it "contained no caveat or disclaimer regarding UIM coverage," because "it did not state that it was the sole expression of UIM coverage, and it referenced other forms, including the UIM endorsement.");

### 2. The "Insuring Agreement" Provision

Plaintiffs next assert that an ambiguity arises under the "Insuring Agreement" provision. They argue without any supporting analysis that this provision "makes an unqualified promise to pay without limitation for damages for bodily injury." [Doc. #22 at 11]. As quoted above, the Insuring Agreement clearly

10

states that coverage is available for bodily injury arising from "use of an **underinsured motor vehicle**, in accordance with all the terms of this Part III(B)." [Doc. #25-1 at 43] (underlined emphasis added). The Insuring Agreement also includes the definition of "**underinsured motor vehicle**" which, as discussed above, includes only those vehicles for which the limits of liability are less than the insured's coverage limit. Id. Thus, the ordinary insured would understand that the "Insuring Agreement" provision does not make "an unqualified promise to pay without limitation" for all bodily injury sustained in an accident with an underinsured motorist.

### 3. The "Limits of Liability" Provision

The Limits of Liability provision is as follows:

**LIMITS OF LIABILITY**

The limit of liability shown on the **declarations page** for Underinsured Motorist Coverage will be reduced by all sums:

1. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I — Liability to Others;

2. paid or payable under Part II — Medical Payments Coverage;

3. paid or payable because of **bodily injury** under any of the following or similar laws:

    a. workers' compensation law; or

    b. disability benefits law; and

4. paid under Part III(A) — Uninsured Motorist Coverage for **bodily injury** arising out of the same accident.

The limit of liability shown, subject to all applicable reductions, will apply regardless of the number of:

1. policies issued by **us**;

2. claims made;

3. **covered autos**;

4. **insured persons**;

5. lawsuits brought;

6. vehicles involved in the accident; or

7. premiums paid.

If **your declarations page** shows a split limit:

1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person;

   and

2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident.

Part III(B)(c) (underlined emphasis added) [Doc. #25-1 at 44].

The very first sentence of this provision clearly states that the coverage amount shown on the declarations page "will be reduced by . . ." an itemized list of reductions. The provision further states that the "limits of liability shown, <u>subject to all applicable reductions</u>, will apply regardless of the number of" policies, claims, covered autos, etc. Apparently relying on the fact that the provision refers to the $100,000 amount listed on the declarations page, plaintiffs argue that a fair reading of the Limit of Liability provision is "We will pay $100,000, but no more regardless of" the listed items. [Doc. #22 at 12]. This argument is clearly refuted by the underlined phrase which gives notice that the limit of liability is subject to reduction. "Even if the policy did contain inconsistent statements about the amount of coverage due once coverage has been triggered, such inconsistency would be

12

immaterial to the question at issue here: whether the policy provides for coverage at all." Burger, 822 F.3d at 450. "Nothing in [the] UIM limit-of-liability section undermines the requirement that a tortfeasor's vehicle first must qualify as underinsured in order to trigger UIM coverage." Id.

### 4. The "Other Underinsured Motorist Coverage" Provision

Plaintiffs contend that the other-insurance clause creates the impression that the UIM coverage is excess over and above the underinsured tortfeasor's coverage. The provision states:

**OTHER UNDERINSURED MOTORIST COVERAGE**

> If any insurance **we** provide in accordance with the terms of this Part III(B) is applicable and <u>any other underinsured motorist coverage from another insurer also applies</u>, any insurance **we** provide will be excess over any other collectible underinsured motorist coverage from another insurer. This means that **we** will pay only after all other collectible underinsured motorist coverage from other insurers has been exhausted by payment of judgments or settlements. If this policy and one or more policies from another insurer apply on an excess basis, **we** will pay only **our** share of the damages. **Our** share is the proportion **our** limit of liability bears to the total of all applicable underinsured motorist coverage limits from all applicable policies.

Part III(B)(d) [Doc. #25-1 at 45] (underlined emphasis added). No other "underinsured motorist coverage from another insurer" applies in the plaintiffs' cases, and thus this provision is simply inapplicable.

* * *

The Court finds that the Progressive policy unambiguously defines underinsured motorist coverage to exclude plaintiffs' claims in this case.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. #24] is **granted**.

13

**IT IS FURTHER ORDERED** that plaintiffs' motion to supplement [Doc. # 32] is **granted.**

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment [Doc. # 21] is **denied**.

A separate judgment in accordance with this Memorandum and Order will be entered.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 11th day of January, 2017.